## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**RITA SOMALAKIS,**

            **Plaintiff,**

**v.**                                    **No. CIV 06-116 BB/WDS**

**UNITED HEALTHGROUP, INC., d/b/a
UNITED HEALTHCARE SERVICES,
INC.,**

            **Defendant/Third-Party Plaintiff,**

**v.**

**THE LOVETT LAW FIRM TRUST ACCOUNT,**

            **Third-Party Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court pursuant to the following motions:  (1) a motion for summary judgment (Doc. 17) filed by Defendant/Third Party Plaintiff ("Defendant"); (2) a motion for summary judgment (Doc. 35) filed by Third-Party Defendant ("Law Firm"); and (3) a motion to strike exhibits (Doc. 37) filed by Defendant.  Having considered the submissions of the parties and the applicable law, the Court will grant the motion to strike and deny both motions for summary judgment.

### Brief Summary of the Facts

Plaintiff was injured by a third-party driver in an automobile accident.  She had medical insurance as a beneficiary of an employer-provided benefit plan administered by Defendant and governed by ERISA, 29 U.S.C.A. § 1001 *et seq.*  Defendant paid medical bills totaling $100, 259.46

on behalf of Plaintiff.  Meanwhile, Plaintiff retained the Law Firm to represent her and negotiated a settlement with the third-party driver's insurance company.  The liability limits of the third-party driver's insurance policy were $100,000, and Plaintiff settled for that amount.  The $100,000 was paid in two checks:  one for $33,333.33, made payable to Defendant and the Law Firm and sent to Defendant,[1] and one for $66,666.67, payable to Plaintiff and the Law Firm and sent to the Law Firm. The former check has not yet been negotiated and is in Defendant's possession, while the latter was disbursed to Plaintiff, has apparently been negotiated, and is no longer in the possession of the Law Firm.  Plaintiff and the Law Firm believe that Defendant has no right to retain any of the settlement proceeds, and filed suit in state court seeking a declaratory judgment to that effect.  Defendant then removed the case to this Court, and the parties filed their respective motions for summary judgment. Defendant asserts a right to the entire $100,000 settlement and the Law Firm and Plaintiff continue to maintain that Defendant is entitled to none of it.

**Applicable Standards**

"Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.*  On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty*

---

[1]The Court recognizes that the actual payee was one of the attorneys of the Law Firm, not the Law Firm itself; however, to keep the number of parties referenced in this opinion to a minimum, the Court will refer to the checks as having been made payable to the Law Firm.

*Lobby, Inc.*, 477 U.S. 242, 252 (1986).  A motion to strike evidence, on the other hand,  is directed at the Court's discretion.  *Praseuth v. Rubbermaid, Inc.,* 406 F.3d 1245, 1253 (10th Cir. 2005) (admission or exclusion of evidence is matter within trial court's discretion).  The Court will review the motions filed in this case with the above standards in mind.

### Motion to Strike Exhibits

The Law Firm submitted as exhibits copies of letters expressing Defendant's agreement to accept $33,333.33 in satisfaction of its subrogation rights.  [Law Firm MSJ, Exhs. 1, 2]  The Law Firm argues these letters and their contents are admissible to prove the amount of money at issue in this case.  However, the Court has already denied the request of Plaintiff and the Law Firm to remand this case to state court, rejecting their amount-in-controversy argument in the process.  [Doc. 21] These letters do not cause the Court to reconsider the ERISA roots of the controversy.  Defendant's motion to strike will be granted, and the Court has not considered the settlement offers in any way in deciding the pending motions in this case.

### Motions for Summary Judgment

Both of the motions for summary judgment address the same issues, and the Court will therefore address them together.  There are two main issues in this case:  (1) whether Defendant is pursuing "appropriate equitable relief" under ERISA; and (2) if so, whether Defendant is entitled to all or any portion of the $100,000 settlement proceeds.  There are several sub-issues that must be resolved to reach a decision on these main issues, and the Court will therefore address each separately.

**Appropriate Equitable Relief:**  In a case such as this one, where an ERISA plan's fiduciary seeks reimbursement from a plan beneficiary, ERISA allows the fiduciary to pursue only "appropriate equitable relief" under Section 502(a)(3)(B) of the statute.  *See, e.g., Great-West Life & Annuity Ins.*

*Co. v. Knudson*, 534 U.S. 204 (2002).  The Supreme Court has held that the fiduciary cannot simply file suit to impose a general monetary liability upon the beneficiary; instead, the fiduciary must bring a claim that was historically "equitable," for imposition of a constructive trust or an equitable lien. *See id.*, 534 U.S. at 210*; Sereboff v. Mid Atlantic Medical Servs., Inc.*, 126 S.Ct. 1869, 1874-75 (2006).  In order to satisfy this requirement, the fiduciary must be able to identify a specific fund of money to which a constructive trust or equitable lien may attach, rather than simply asserting that the beneficiary was paid a certain amount of money.  *Sereboff, supra.*  In addition, the specific fund of money must be under the control, actual or constructive, of the beneficiary or the beneficiary's agent (such as an attorney).  *See Admin. Comm. of the Wal-Mart Assocs. Health And Welfare Plan v. Willard*, 393 F.3d 1119, 1122 (10th Cir. 2004).  If a qualifying specific fund can be identified, the fiduciary will be allowed to assert a trust or lien over it, if such action is appropriate under the circumstances of the case.  *See id.* (setting out a three-part test that should be applied to determine whether a fiduciary may maintain an action for appropriate equitable relief against a beneficiary).

The first question to answer in this case, therefore, is whether there is a specifically identifiable fund upon which a constructive trust or equitable lien may be imposed.  As noted above, the $100,000 settlement was split into two parts, consisting of the $33,333.33 check that is still in Defendant's possession and the $66,666.67 that has already been disbursed to Plaintiff.  The check that is in Defendant's possession is clearly a specifically identifiable fund of money, and an attempt to assert a trust or lien over that fund constitutes an allowable action for appropriate equitable relief under ERISA.  This is true despite the Law Firm's argument that the check is not in its possession or control because Defendant has physical possession of the check.  The check is payable to both the Law Firm and Defendant, and cannot be negotiated without the endorsement of both parties.  Therefore, the Law Firm retains some control over the fund of money represented by the check, and

4

may be the target, as Plaintiff's agent, of an action for constructive trust or equitable lien.  *See Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 356-57 (5th Cir.2003) (plaintiff's attorney held funds as plaintiff's agent and could be target of ERISA action for appropriate equitable relief).[2]

As to the remaining $66,666.67 of the settlement, it is not clear at this time whether Defendant may maintain an action for appropriate equitable relief directed toward those funds.  There is no evidence in the record indicating what has happened to that money--no information has been provided as to whether the money remains available in a specific account, or has been spent or otherwise disposed of.  If the money or a portion of it still remains in a specific, identifiable fund, an action to impose a constructive trust or equitable lien over that fund would be an action for appropriate equitable relief under ERISA.  *See Sereboff, supra.*  On the other hand, if the money has been dissipated, Defendant will not be allowed to pursue this action insofar as it concerns the $66,666.67, because the action would constitute nothing more than an attempt to impose general legal liability upon Plaintiff in that amount.  *See Great-West, supra.*[3]  At this time, therefore, the Court is unable to determine whether Defendant's attempt to obtain reimbursement of the $66,666.67 portion of the settlement is an appropriate action under ERISA.

---

[2]The Court notes the Law Firm's argument that a constructive trust or equitable lien is not necessary, because Defendant is in possession of the check.  However, as the Court has pointed out, the check cannot be negotiated without the Law Firm's endorsement.  If Defendant is found to be entitled to the $33,333.33 represented by the check, equitable relief may be imposed by requiring that the Law Firm endorse the check so that Defendant may negotiate it.  In other words, the Law Firm can be said to  be in constructive possession of the check, due to its power to prevent negotiation of the instrument.

[3]Defendant characterizes this as a "horrendous" policy outcome:  persons who dissipate settlement funds will not be subject to suit under ERISA, while those who preserve the funds will be.  The Court declines to address this policy question; regardless of whether the policy has merit, this result is dictated by *Sereboff* and *Great Western*, cases this Court is not free to ignore.

**Defendant's Entitlement to Reimbursement:** As noted above, Plaintiff and the Law Firm contend that Defendant is not entitled to any part of the $100,000 settlement, regardless of whether a specific fund has been or can be identified. Their position is based on two distinct arguments. First, they contend the benefit plan governing the relationship between Plaintiff and Defendant does not contain a subrogation clause which would entitle Defendant to all or a portion of the settlement. Second, they contend that even if such a clause is present in the plan, a doctrine known in insurance law as the "make whole" doctrine precludes Defendant's entitlement to the settlement proceeds. The Court will address each of these arguments in turn.[4]

**Construction of the Benefit Plan:** Prior to addressing the language of the plan, the Court must resolve an issue that no party addressed in the briefs. The Court must decide whether to review Defendant's interpretation of the plan language under an abuse-of-discretion standard, or to conduct a de novo review of the language. The standard of review to be applied when an ERISA-governed plan's construction is at issue depends on whether the plan gives the fiduciary discretion to interpret the plan's terms. *See Willard, supra.* If such discretion is conferred by the plan, this Court's review is only to decide whether the fiduciary's determination that it is entitled to the funds constitutes an arbitrary and capricious interpretation of the plan. *See id.* Otherwise, the Court is free to conduct a de novo review of the plan's language. As an exhibit to the motion for summary judgment, Defendant has submitted a portion of the plan which states, "The Plan Administrator has the discretion to construe and interpret the terms of this Plan and the authority and responsibility to make factual determinations." [MSJ, Exh. D] Given this grant of discretion to the administrator, the Court's review will be constrained by the arbitrary-and-capricious standard.

---

[4]Discussion of these issues essentially corresponds to the second part of the *Willard* three-part test mentioned above--whether the funds in question belong "in good conscience" to the plan. 393 F.3d at 1122.

Defendant contends the plan contains a clear expression of Defendant's right to be reimbursed out of any funds Plaintiff obtains from a third party, while Plaintiff contends the plan contains no subrogation provision at all.  In analyzing the language of the plan, the difference between "subrogation" and "reimbursement" must be kept in mind.  Subrogation is the insurer's right to step into the shoes of the insured and bring an action against or otherwise recover from a third-party tortfeasor.  Reimbursement, on the other hand, is the insurer's right to recover from the insured, after the insured has obtained funds from the third-party tortfeasor.  *See, e.g., Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 278 (1st Cir. 2000); *Provident Life & Accident Ins. Co. v. Williams*, 858 F.Supp. 907, 911 (W.D. Ark. 1994); Russ, Lee and Segalla, Thomas, *Couch on Insurance 3d*, Vol. 16, p. 226-15 (2005) (discussing difference between subrogation and reimbursement).  An insurer's right to either subrogation or reimbursement is governed by the language of the contract (in ERISA cases like this one, the benefit plan), and an insurer is not automatically entitled to reimbursement simply because the plan may include language granting a right of subrogation.  *See id.*  The distinction between the two concepts is important in this case because, while the plan at issue does appear to contain language granting Defendant a right of subrogation, it is much more difficult to construe the plan language to allow Defendant to obtain reimbursement from a beneficiary.

The relevant language of the plan is as follows:

The Company may pay benefits that should be paid by another plan or organization or person.  The Employer or Plan may recover the amount paid from the other plan or organization or person.

Benefits may be paid that are in excess of what should have been paid under this Plan.  The Employer or Plan has the right to recover the excess payment.

In deciding whether the above language authorizes a claim for reimbursement against Plaintiff, the language must be given its common and ordinary meaning, and interpreted in the same manner

7

as a reasonable person would understand it. *See Willard, supra,* 393 F.3d at 1123. Even though the provision does not use the actual term "subrogation," the first paragraph explains the concept in plain language. It is immediately apparent, however, that this first paragraph allows recovery only from a third party; it does not authorize Defendant to seek reimbursement from Plaintiff, should Plaintiff be able to obtain compensation from the third party. This paragraph, by specifying that the Plan may recover the amounts it has paid "from the other plan or organization or person," expressly limits Defendant to its subrogation rights against third parties and does not allow it to exercise a right of reimbursement against Plaintiff. *See Williams, supra*, 858 F.Supp. at 911 (beneficiaries were not listed as party from whom Plan could recover, despite thorough listing of sources from which recovery could be had; court held Plan contained no contractual right to reimbursement).

Similarly, the excess-benefits provision does not create a contractual right of reimbursement in a case such as this one, where the beneficiary pursues and obtains recovery from a third party. The immediately preceding paragraph, discussed above, specifically addresses the third-party liability situation, and limits Defendant's remedy in such a situation to recovery of the amounts it has paid from the third party who should have paid those amounts. A reasonable person would not understand that the general excess-benefits provision applies to the exact same situation. In addition, a reasonable person would not understand that medical expenses paid by Defendant, which was contractually obligated to pay them, suddenly became "in excess of what should have been paid under this Plan" simply because there was a third party who may also have been legally obligated to pay for the medical expenses. Even under the limited abuse-of-discretion review, the Court finds Defendant did abuse its discretion in construing the above plan provisions to allow Defendant to pursue reimbursement of amounts paid by the third party directly to Plaintiff. *See, e.g., Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th Cir. 2000) (arbitrary-and-capricious standard of review does not give

plan unlimited discretion to interpret plan language in any manner it sees fit); *cf.* 29 C.F.R. §2520.102-3 (ERISA plan must contain statement "clearly identifying circumstances" that may result in, *inter alia*, subrogation or reimbursement).

The above analysis, however, does not end the matter.  For one thing, the $33,333.33 check which is in Defendant's possession, and is payable jointly to Defendant and the Law Firm, may have been paid pursuant to Defendant's right of subrogation, rather than the non-existent right to reimbursement.  As noted above, the plan does allow Defendant to pursue payment directly from the third party, and this payment apparently came directly from the third party.  Without further facts indicating how the payment came about, the Court cannot determine whether the payment was a result of Defendant's direct assertion of its subrogation rights, or an after-the-fact assertion of its claimed right to reimbursement.

In addition, although neither party has briefed this issue, the Court notes that a few courts have recognized a federal common-law cause of action for unjust enrichment, even in the absence of a contractual reimbursement provision.  *See, e.g., Smith v. Metropolitan Life Ins.* Co., 344 F.Supp.2d 696, 705-06 (D. Colo. 2004); *Williams, supra*, 858 F.Supp. at 912.  The Court also notes that several courts have strongly disapproved of the recognition of such a common-law right, in convincing fashion.  *See, e.g., Provident Life & Accident Ins. Co. v. Cohen*, 423 F.3d 413, 423-25 (4th Cir. 2005); *Coop. Benefit Adm'rs, Inc. v. Ogden*, 367 F.3d 323, 335 (5th Cir. 2004).  However, the Court declines at this time to decide whether Defendant might be entitled to some or all of the $100,000 under a federal common-law claim for unjust enrichment, until the parties have an opportunity for input into this issue.

The above discussion of the plan may be summed up as follows:  (1) the plan does create a right of subrogation in Defendant, but does not provide a right of reimbursement; (2) it is not clear

whether the $33,333.33 check was obtained pursuant to the former or the latter, and therefore the Court cannot hold as a matter of law that Defendant is not entitled to any portion of the $100,000; and (3) there is a possibility the unjust-enrichment doctrine might have an impact on this case, should Defendant attempt to pursue relief under that theory.

**Make-Whole Doctrine:**  As a separate and distinct argument supporting their contention that Defendant is not entitled to any portion of the $100,000 settlement, Plaintiff and the Law Firm argue that the insurance-law doctrine known as the make-whole doctrine applies to this case and precludes any recovery for Defendant.  The make-whole doctrine states as follows:  when an insured is injured by a third-party tortfeasor, and her medical expenses are paid by her own insurer, that insurer's subrogation or reimbursement rights do not take effect until the insured has been fully compensated for the losses caused by the third party.  *See Copeland Oaks, supra*, 209 F.3d at 814; *Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 280 (1st Cir. 2000).  In deciding whether full compensation has been had, the amounts paid by the insurer must be included with the amounts paid by the third party.  *See Copeland Oaks*.  In this case, for example, Plaintiff apparently incurred medical expenses of $100,259.46, all of which were paid by Defendant.  Plaintiff then obtained a settlement of $100,000 from the third party's insurer, making her effective total recovery to date $200,259.46.  Under the make-whole doctrine, the Court would first need to determine whether all of Plaintiff's damages, including medical expenses, lost wages, pain and suffering, attorney's fees and costs, and any other damages she suffered, have been more than satisfied by the $200,259.46 she has received.  Only if that is true would the Court proceed to decide Defendant's entitlement to a portion of the $100,000 settlement.  *See id.*

The first question is whether the make-whole doctrine applies to this ERISA case as a matter of state law.  The underlying analysis is somewhat complicated, implicating ERISA's preemption

clause, saving clause,  and "deemer" clause, as well as an inquiry into whether the make-whole rule is a state law that regulates insurance.  *See  FMC Corp. v. Holliday,* 498 U.S. 52, 60-61 (1990); *Blue Cross and Blue Shield of Alabama v. Fondren,* 966 F.Supp. 1093, 1095-97 (M.D. Ala. 1997). The bottom line, however, is this:  the make-whole doctrine will not apply as a matter of state law if the plan in question is a self-funded plan; on the other hand, if the employer funds the plan by simply purchasing insurance for its employees, the state-law doctrine will apply.  *See Alves v. Silverado Foods, Inc.*, 6 Fed.Appx. 694, 701 (10th Cir. 2001); *Fondren, supra.*

Plaintiff and the Law Firm, without citing any evidence, suggest that the plan in question in this case is not self-funded but is " premium funded and/or insurance funded insurance which is regulated by state law..."  [Resp. to MSJ, p. 2]   Defendant, however, has attached exhibits establishing that the plan is self-funded.  [MSJ Addendum, Exh. A, p. 2; Exh. E]  In the absence of any contrary evidence, the Court finds the plan is self-funded.  Therefore, the make-whole doctrine is not applicable to this case as a matter of state law.

The next question is whether the Court should apply the make-whole doctrine as a matter of federal common law.  A number of circuits have decided to do so in ERISA cases similar to this one. *See, e.g., Copeland Oaks, supra*, 209 F.3d at 813; *Cagle v. Bruner*, 112 F.3d 1510, 1521-22 (11th Cir. 1997); *Barnes v. Indep. Auto. Dealers Ass'n of California Health & Welfare Benefit Plan*, 64 F.3d 1389, 1395 (9th Cir. 1995).  Other circuits have rejected this approach. *See, e.g., Harris. supra*, 208 F.3d at 280-81; *Waller v. Hormel Foods Corp.*, 120 F.3d 138, 140 (8th Cir. 1997); *Sunbeam-Oster Co. v. Whitehurst*, 102 F.3d 1368, 1374-76 (5th Cir. 1996).  Even in the circuits which have adopted a federal common law make-whole doctrine, the doctrine is considered merely a "default" rule; that is, if the plan's language clearly shows an intent to require reimbursement whether or not the beneficiary has been made whole, or unambiguously grants the fiduciary first priority to any funds

11

recovered from a third party, the make-whole rule will not apply.  *See Copeland Oaks, supra;*
*Barnes, supra*, 64 F.3d at 1394.

Some circuits, including the Tenth, have avoided deciding whether to adopt a make-whole
rule as a matter of federal common law, by examining the plan's language in question and determining
that, even if the make-whole doctrine were to be considered a default rule, the language was sufficient
to override the doctrine.  *See Alves*, *supra*; *Moore v. Capital Care, Inc.*, 461 F.3d 1, 10 (D.C. Cir.
2006) (court need not decide whether to adopt the make-whole doctrine as default rule under federal
common law, because plan's language unambiguously established plan's priority to any third-party
recovery).  In the case before the Court, this option is not available.  As discussed above, the plan in
this case does not contain any reimbursement provision at all, let alone a provision that would grant
Defendant the right to recover all of its payments whether or not Plaintiff has been made whole by
her recovery from the third party.  Furthermore, there is no language in the plan granting Defendant
first priority to any recovery from a third party.  The Court is therefore faced squarely with the need
to decide whether the make-whole rule should be adopted as a matter of federal common law in
ERISA subrogation/reimbursement cases.

The Court finds this task difficult because none of the cases either adopting or rejecting the
make-whole doctrine as a default rule contain a convincing explanation for that adoption or rejection.
The cases adopting the doctrine emphasize that one of ERISA's main purposes is to protect
participants in employee benefit plans.  *See Barnes, supra*, 64 F.3d at 1394-95.  Cases rejecting the
doctrine, on the other hand, emphasize that one of ERISA's main purposes is to protect employee
benefit plans as a whole, rather than individual beneficiaries.  *See Harris*, *supra*, 208 F.3d at 279-81.
These rationales do not assist because, in the Court's view, ERISA is intended to protect both
individual beneficiaries and the plans as a whole.  Both of those purposes, rather than just one, must

be kept in mind when deciding whether the make-whole doctrine should be adopted as a matter of federal common law.  *See Barnes, supra.*  In addition, it is important to remember that ERISA provides for appropriate equitable relief, not simply relief of a legal nature.  What is equitable or fair can not be decided as a blanket rule, by holding that the make-whole doctrine is either always applicable to subrogation/reimbursement cases or is never applicable to such cases.  Instead, application of the make-whole doctrine should be decided on a case-by-case basis, taking into account the amount of reimbursement sought, the amount of damages suffered by the plaintiff, and the amount of recovery obtained from the third party.  *Cf. Harris, supra* (discussing common-fund doctrine, a common-law doctrine similar to the make-whole doctrine but applying only to attorney's fees and costs; while rejecting application of doctrine in case before it, implying that result might be different if beneficiary's recovery from third party had been insufficient to pay both the expenses of litigation and the amount of reimbursement sought by the fiduciary).

In this case, Plaintiff retained an attorney to pursue a recovery from the third-party tortfeasor. She obtained a recovery of $100,000, the limits of the third party's liability coverage.  Despite the fact that Plaintiff is obligated to pay her attorney's fees and costs, Defendant maintains it is entitled to the entire $100,000 recovery because it paid out more than that amount in medical expenses. Defendant does not explain, however, why it would be fair or equitable to force Plaintiff to pay for an attorney to recover money for Defendant's sole benefit.  *See Waller v. Hormel Foods Corp.*, 120 F.3d 138, 141 (8th Cir. 1997); *Dugan v. Nickla*, 763 F.Supp. 981, 984-85 (N.D. Ill. 1991). Furthermore, assuming Plaintiff has damages other than medical expenses, such as lost wages or permanent injuries to her person, Defendant must explain to the Court why its desire for reimbursement should take priority over these other damages suffered by Plaintiff.  *Cf. Speciale v. Seybold*, 951 F.Supp. 740, 745 (N.D. Ill. 1996) (summary judgment denied where plan had not

explained equities of its claim over unpaid medical expenses and attorney's fees), *rev'd on other grounds*, 147 F.3d 612 (7th Cir. 1998).  At this point, the Court has no information about damages Plaintiff may have suffered, other than the medical expenses paid by Defendant.  The Court is therefore unable to decide whether the make-whole doctrine should be applied to this case as a matter of federal common law.  The Court will defer ruling on that issue until the necessary facts have been adduced at trial.[5]

**Conclusion**

Based on the foregoing discussion, the following issues remain to be decided at the trial of this matter:  (1) whether the $66,666.67 that was disbursed to Plaintiff has been placed in a specific, identifiable fund that can be attached by way of a constructive trust or equitable lien; (2) in the absence of a reimbursement provision in the plan, whether Defendant might be entitled to impose such a trust or lien on the $33,333.33 check, pursuant to the subrogation provision contained in the plan; (3) assuming the $66,666.67 is still reachable by a constructive trust or equitable lien, whether Defendant might be entitled to a trust or lien on all or a portion of the $100,000 pursuant to an action for unjust enrichment; and (4) whether either the make-whole doctrine or the common-fund doctrine should apply to this case as a matter of federal common law.  The motions for summary judgment filed by the Law Firm and Defendant will be denied.

**ORDER**

Pursuant to the foregoing memorandum opinion filed this date, it is ORDERED that the motions for summary judgment (Docs. 17, 35) filed by Defendant and the Law Firm be, and hereby

---

[5]In the exercise of its equitable powers, the Court will also bear in mind the possible application of the common-fund doctrine discussed but rejected in *Harris*, as an alternative to the make-whole rule.

are, DENIED.  It is also ORDERED that the motion to strike exhibits (Doc. 37) filed by Defendant

be, and hereby is, GRANTED.

Dated this 20th day of February, 2007.


BRUCE D. BLACK
United States District Judge



**Attorneys:**

**For Plaintiff and Third Party Defendant**
Robert L. Lovett
Charles Ruhmann

**For Defendant**
Michael J. Cadigan
Tatiana D. Engelmann